William J. Honan
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR DEFENDANT
TONNEVOLD REEFER 7 KS, A/K/A,
TONNEVOLD REEFER 4 KS, A/K/A, AND
O.T TONNEVOLD AS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTWIND MARITIME, S.A.<br><br>                              Plaintiff,<br><br>            -against-<br><br>TONNEVOLD REEFER 7 KS,<br>a/k/a TONNEVOLD REEFER 2 KS,<br>a/k/a TONNEVOLD REEFER 4 KS,<br>a/k/a O.T. TONNEVOLD AS,<br>a/k/a TONNEVOLD OT,<br><br>                              Defendant. | 08 Civ. 03292 (HB)<br><br>**VERIFIED ANSWER**<br>**AND COUNTER-CLAIM** |

NOW COMES Defendant, Tonnevold Reefer 7 KS, A/K/A, Tonnevold Reefer 4 KS,

A/K/A, O.T. Tonnevold AS, A/K/A, and Tonnevold OT (collectively "Tonnevold" or

"Defendant"), by and through its attorneys, Holland & Knight LLP, answering the Complaint of

Eastwind Maritime, S.A. ("Eastwind"), and respectfully alleging as follows:

1.    Admits the allegations set forth in paragraph "1" of the Verified Complaint.

2.    Admits Eastwind Maritime Inc. lists on its website an office at 444 Madison Avenue, New York, New York, 10022, but denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph "2" of the Verified Complaint.

3.    Admits the allegations set forth in paragraph "3" of the Verified Complaint.

4.    Admits the allegations set forth in paragraph "4" of the Verified Complaint.

5.    Admits Tonnevold is the registered owner of the *M/V Thorgull ("Thorgull"* or "Vessel"), and denies the remainder of the allegations set forth in paragraph "5" of the Verified Complaint.

6.    Admits that Tonnevold Reefer 4 KS originally entered into a time charter for the *Thorgull* with ECo Shipping Ltd. ("ECo") on or about September 29, 2000, and denies the remainder of the allegations set forth in paragraph "6" of the Verified Complaint.

7.    Admits that Tonnevold agreed to enter into a mitigating charter party with ECo and Eastwind on or about December 6, 2006 ("Mitigating Charter"), after ECo and Eastwind breached the December 20, 2005 charter between Tonnevold Reefer 7 KS, a successor corporation, and ECo ("Breaching Charter"), and denies the remainder of the allegations set forth in paragraph "7" of the Verified Complaint.

8.    Admits that Tonnevold, ECo and Eastwind agreed to three addenda to the Mitigating Charter in connection with the Vessel, and  denies the remainder of the allegations set forth in paragraph "8" of the Verified Complaint.

9.    Admits that Tonnevold, ECo and Eastwind agreed to a third addendum to the Mitigating Charter on or about July 19, 2007, for the Vessel and that the Vessel carried cocoa

beans shipped from Panjang, Malaysia to Buenaventura, Columbia, and denies the remainder of the allegations set forth in paragraph "9" of the Verified Complaint.

      10.      Admits that the third addendum between Tonnevold, ECo and Eastwind is a maritime contract, but denies the remainder of the allegations set forth in paragraph "10" of the Verified Complaint.

      11.      Admits that with respect to the voyage from Penjang to Buenaventura, ECo and Eastwind made regular and timely hire payments to Tonnevold, and denies the remainder of the allegations set forth in paragraph "11" of the Verified Complaint.

      12.      Denies the allegations set forth in paragraph "12" of the Verified Complaint.

      13.      Admits that ECo and Eastwind have demanded Tonnevold pay $297,748.04 in connection with the Vessel and that Tonnevold has not made payment to ECo and/or Eastwind in the amount claimed in paragraphs "12" and "14" of the Verified Complaint due to ECo and Eastwind's breach of the Breaching Charter, and denies the remainder of the allegations set forth in paragraph "13" of the Verified Complaint.

      14.      Denies the allegations set forth in paragraph "14" of the Verified Complaint.

      15.      Admits that the charter between Tonnevold, ECo and Eastwind provides, at clause 22, that any disputes arising out of the charter shall be governed by English law and shall be referred to arbitration in London, and denies the remainder of the allegations set forth in paragraph "15" of the Verified Complaint.

      16.      Paragraph "16" asserts legal conclusions to which no response is required.

      17.      Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph "17" of the Verified Complaint.

      18.      Denies the allegations set forth in paragraph "18" of the Verified Complaint.

19.    Admit that at least one garnishee bank in this District has attached monies in connection with this action, and that an arbitration will decide the merits of the dispute between the parties, and denies the remainder of the allegations set forth in paragraph "19" of the Verified Complaint.

20.    Admit that at least one garnishee bank in this District has attached monies in connection with this action, and denies the remainder of the allegations set forth in paragraph "20" of the Verified Complaint.

21.    Admits Tonnevold cannot be found within the Southern District of New York within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Forfeiture Actions of the Federal Rules of Civil Procedure, and asserts the statement in paragraph "21" of the Verified Complaint concerning the affidavit of Owen F. Duffy is a legal conclusion to which no response is required.

22.    Paragraph "22" asserts legal conclusions to which no response is required.

### FURTHER ANSWERING THE COMPLAINT, AND AS FOR SEPARATE, PARTIAL AND/OR COMPLETE DEFENSES THERETO, DEFENDANT TONNEVOLD STATES:

23.    The Verified Complaint fails to state a cause of action upon which relief may be granted.

24.    Tonnevold is not liable to ECo and Eastwind on the causes of action alleged in the Verified Complaint.

25.    This Court lacks *quasi in rem* jurisdiction over Defendant.

26.    ECo and Eastwind has improperly and/or insufficiently served process on Tonnevold.

4

27.     Eco and Eastwind's claims are barred by the equitable doctrine of unclean hands.

28.     Any damages sustained by ECo and Eastwind, as alleged in the Verified Complaint, were proximately caused by the negligent acts of third persons whom Tonnevold has no direction or control.

29.     ECo and Eastwind's claims are overstated in the level of security sought from and provided by Tonnevold and should be reduced to a reasonable sum.

30.     Tonnevold pleads by way of defense and/or limitation every provision in the Breaching Charter, Mitigating Charter, and the addendums to the Mitigating Charter.

31.     Eco and Eastwind's claims are subject to arbitration in London, England and English law pursuant to the Breaching Charter, the Mitigating Charter, and the addendums to the Mitigating Charter, and Tonnevold has no liability to ECo and Eastwind as a matter of law.

32.     This Answer and Counter-claim is made without waiver of any of the jurisdictional defenses or rights to arbitrate that may exist between Tonnevold, ECo, and Eastwind.

## TONNEVOLD'S COUNTER-CLAIM
### (Breach of a Maritime Contract)

As for its Counter-claim against Eastwind and ECo, Tonnevold alleges as follows:

33.     Admiralty and maritime jurisdiction lies pursuant to 28 U.S.C. §1333(1) for Tonnevold's counter-claim, as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

34.     At all material times herein, Tonnevold is a foreign business entity organized and existing under the laws of Norway, and maintains a place of business in Grimstad, Norway.

35.    Upon information and belief, at all times material herein, Eastwind is and was a business entity organized and existing under the laws of a foreign country, and claiming an office in the United States at 444 Madison Avenue, New York, New York 10022.

36.    Upon information and belief, at all times material herein, ECo, alter-ego of Eastwind, is and was a business entity organized and existing under the laws of a foreign country, maintaining a place of business at 80 Broad Street, Monrovia, Liberia.

**The Charter**

37.    On or about September 29, 2000, Tonnevold Reefer 4 KS entered into a time charter of the *Thorgull* with ECo for a period of about twelve months, which charter was extended by the agreement of the parties until December 20, 2005. On or about September 29, 2000, Tonnevold Reefer 4 KS entered into a pool agreement with ECo to include the *Thorgull*.

38.    On or about December 20, 2005, a successor to Tonnevold Reefer 4 KS, Tonnevold Reefer 7 KS, entered into a charter with ECo for charter of the *Thorgull* for a period of about twelve months (the "Charter"). At the same time, Tonnevold Reefer 7 KS and ECo entered into a new pooling agreement with respect to the Vessel, named "ECo 2002 Pool Agreement" ("Pooling Agreement 02"). Both the Charter and the Pooling Agreement 02 were executed by Mr. Charles T. ("Toby") Moors, Vice President of ECo Shipping.

39.    Pursuant to the Charter and while in the employ of ECo, the *Thorgull* performed a voyage from Los Palmas, Canary Islands to Tarifa, Spain from August 7 – September 18, 2006. During the voyage, the *Thorgull*, under the control of ECo and Eastwind, received for on-carriage recently-caught redfish from at least seven fishing vessels at sea.

6

40.     All of the vessels from which the *Thorgull* received transshipments had been blacklisted by North East Atlantic Fisheries Commission ("NEAFC") and Northwest Atlantic Fisheries Organization ("NAFO") for activity that had contravened the NEAFC and NAFO rules and regulations.

41.     In receiving redfish for on-carriage for the blacklisted vessels, ECo violated the NEAFC regulations, specifically Article 44 of the NEAFC Scheme of Control and Enforcement ("NEAFC Enforcement"), which prohibited such on-carriage of certain protected fish species, such as redfish.

42.     The NEAFC is a Regional Fisheries Management Organization ("RFMO") that exists to conserve and manage the fishery resources of the northeast region of the Atlantic Ocean. The NAFO is another RFMO that exists to protect the fishery resources in a contiguous area, the northwest Atlantic Ocean.

43.     This violation of the NEAFC rules and regulations is illegal activity in breach of Charter Clause 15, which requires that ECo and Eastwind employ the Vessel in "lawful trades."

44.     As a result of the breach, NEAFC placed the *Thorgull* on the blacklist on November 17, 2006 and NAFO placed the "Thorgull" in its blacklist on February 23, 2007.

45.     Through the diligent efforts of Tonnevold, the *Thorgull* was removed from the NEAFC blacklist on November 16, 2007, approximately one year after it was placed on the list, and from the NAFO blacklist thereafter.

46.     As a result of the blacklisting of the Vessel, Tonnevold was unable to charter the vessel at market rate. In order to mitigate the damages caused by ECo's breach of the Charter, its alter-ego Eastwind agreed to charter the *Thorgull* while the Vessel was blacklisted.

7

47.     On December 6, 2006, ECo, through its alter-ego Eastwind, and Tonnevold entered into a charter for a period of "about 60 days" as part of ECo and Eastwind's agreement to employ the *Thorgull* during the period it was blacklisted, the Mitigating Charter.

48.     There were three single-page addenda to the Mitigating Charter; Addendum Number 1 is dated February 13, 2007, Addendum Number 2 is dated April 19, 2007, and Addendum Number 3 is dated July 19, 2007. All three addenda incorporate by reference the terms of the Mitigating Charter except revising *inter alia*, delivery, cargo, and hire information for the Vessel and identify Eastwind (acting on behalf of ECo), as Charterers, and Tonnevold, as Owners.

## ECo and Eastwind are Alter-egos

49.     ECo is the alter-ego of Eastwind because it dominates and disregards ECo's corporate form to the extent that Eastwind is actually carrying on ECo's business and operations as if the same were its own, or vice versa.

50.     In early 2006, Mr. Moors, acting on behalf of the interests of ECo and Eastwind, indicated to Tonnevold that the Pooling Agreement 02 would end because there were too few ships remaining in the pool and running the pool in New York resulted in high administrative accounting costs.

51.     Mr. Moors affirmed to Tonnevold that the *Thorgull*, while leaving the Pooling Agreement 02, would be chartered by Eastwind, on behalf of ECo, in an effort to keep the Vessel working even during the blacklist period. This indicates there existed such unity of ownership and interest between ECo and Eastwind that no separation exists such that the corporate form had been disregarded.

52.     On or about July 12, 2007, Paul Capkanis, of Eastwind Transport, Ltd., on behalf of ECo, reaffirmed Eastwind's continued intent to employ the *Thorgull* in a third addendum to the Mitigating Charter, continuing thereafter until the Vessel was de-listed by the NEAFC.

53.     Tonnevold's communications with ECo and Eastwind concerning the original charter in 2000, the breached Charter, the Mitigating Charter and addenda to that Charter have all involved the same personnel, interchangeably utilizing the same contact information for both entities, including identical mailing addresses, email addresses with the "Eastwind Group," facsimile numbers and telephone numbers, such that there is no meaningful difference between the two entities.

54.     On the Eastwind website, http://www.eastwindgroup.com, an Eastwind entity has a New York address of 444 Madison Avenue, Suite 200, New York, New York.  Plaintiff Eastwind interchanges itself and other members of the "Eastwind Group" in its Verified Complaint, noting Eastwind operates "from the offices of the "Eastwind Group," when in fact the website describes Eastwind Maritime Inc. as the chief management office.  No less than eight "Eastwind" entities are listed on the Eastwind website, none of them being Eastwind Maritime S.A.

55.     The New York State Department of State website lists ECo's address as 444 Madison Avenue, Suite 200, New York, the same address as Eastwind as noted on its website.

56.     Dun & Bradstreet and the New York State Department of State website list  John Kousi as the president and chief executive officer of both Eastwind and ECo.

9

57.    Both the Charter and the Pooling Agreement 02 were executed by Mr. Moors as "Vice-President" on behalf of ECo shipping.  Mr. Moors has also been identified as Vice-President of Eastwind on Internet websites.

58.    The alter-ego relationship between ECo and the Eastwind Group is confirmed in notice provision for Pooling Agreement 02, which states:

> any notices under this agreement may be delivered by mail, electronic mail, telex, or facsimile:
> ECo or the Pool, to
> c/o Eastwind Transport Ltd.
> 444 Madison Avenue
> Suite 200
> New York, NY 10022
> Facsimile: (212) 838-8439
> Telex:  420111 EWINDNY
> Email: eastwind@eastwindgroup.com

The address designated for ECo and Eastwind Transport Ltd. is the same address and facsimile listed for Eastwind.

59.    Based on the foregoing circumstances, ECo used Eastwind to conduct business on its behalf in an effort to mitigate the losses suffered by Tonnevold as a result of ECo's breach of the Charter and despite ECo having provided no consideration to Eastwind.  Alternatively, ECo and Eastwind have commingled funds and/or otherwise have failed to observe corporate formalities when entering into charter agreements.

60.    It is not a general practice in the maritime community, nor anywhere else, for independent companies to allow other companies to enter into charter arrangements on its behalf.

61.    Disregard of corporate formalities when entering into binding agreements by one independent company on behalf of another independent company are suggestive of a relationship that is not "arms length" and support the alter-ego claim.

10

**Tonnevold Damages**

62.    As a result of the blacklisting and the ECo and Eastwind breach of the Charter, Tonnevold has suffered damages in the amount of $836,601.22, as set forth below:

a.    Tonnevold made diligent efforts to have the *Thorgull* removed from the NEAFC blacklist. The efforts to remove the Thorgull from the NEAFC blacklist cost Tonnevold a total of $20,500 as a result of meetings and travel expenses on the part of Tonnevold employees when negotiating with NEAFC.

b.    Tonnevold has been unable to charter the *Thorgull* on the market and, instead, has been chartering it to Eastwind on a series of voyages at below market rate. The loss of revenue while under the charter to Eastwind from January 1, 2007 – September 11, 2007 was $227,940.01.

c.    Despite Tonnevold's diligent efforts to charter the *Thorgull*, the vessel was unemployed during September 12 - November 28, 2007, while the Vessel remained blacklisted. Tonnevold's damages while the Vessel was unemployed was $424,129.21.

d.    As a result of the blacklisting, Tonnevold also suffered damages due to additional expenses incurred in operating the Vessel amounting to a total of $164,032.00, including $147,157.00 for the incremental expenses that Tonnevold incurred as the result of the vessel not trading in its usual trade pattern. The incremental expenses are for crew travel, consumables, and lubricants. The remaining $16,875 in losses is for the transportation of spare parts from Halifax to Alexandria, Egypt, due to the Thorgull not being permitted to enter the port at Halifax because it had been placed on the NEAFC blacklist.

11

63.    Tonnevold has filed for arbitration in accordance with the arbitration provisions contained in all of the Vessel charters described herein, and its Answer and counter-claim are not and cannot be considered a waiver of the parties' agreement to arbitrate.

### PRAYER FOR RELIEF

WHEREFORE, the Defendant Tonnevold respectfully requests:

1.    That this Court dismisses the Verified Complaint against Tonnevold with prejudice;

2.    That this Court cites ECo and Eastwind to answer under oath all allegations in this counter-claim;

3.    That pursuant to the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, this Court issue an Order directing Eco and/or Eastwind to post counter-security in the sum of $836,601.22, failing which, (a) ECo and Eastwind be enjoined from prosecuting its claims against Tonnevold here, in the London arbitration, or any other venue; and/or (b) Eco and Eastwind's attachment of any and all of Tonnevold's property attached in this action pursuant to Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions immediately be vacated;

4.    That upon the posting of counter-security in the sum of $836,601.22, that this matter be placed on the suspense calendar pending arbitration in London, and that this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

12

5.    That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the counter-claim set forth herein as a Judgment of this Court; and

6.    That this Court grant Tonnevold such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          April 18, 2008

HOLLAND & KNIGHT LLP

By: _____

William J. Honan
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007
(212) 513-3200

*Attorneys for Defendant*
Tonnevold

TO:    Chalos, O'Conner & Duffy, LLP
       George E. Murphy
       366 Main Street
       Port Washington, NY 11050
       Tel: 516-767-3600
       Fax: 516-767-3605
       *Attorneys for Plaintiff*

13

## VERIFICATION

STATE OF NEW YORK          )
                           :ss.:
COUNTY OF NEW YORK         )

CHRISTOPHER R. NOLAN, being duly sworn, deposes and says:

I am associated with the firm of Holland & Knight LLP, counsel for Tonnevold, defendant in the foregoing action. I have read the foregoing Verified Answer and counter-claim and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Tonnevold and corresponded with Tonnevold's representatives regarding this matter. I am authorized by Tonnevold to make this verification, and the reason for my making it as opposed to an officer or director of Tonnevold is that there are none within the jurisdiction of this Honorable Court.

_____
Christopher R. Nolan

Sworn to before me this
18st day of April, 2008

_____
Notary Public

Linda M. Wilkens
Notary Public, State of New York
No. 01WI6672455
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 30, 2010 ____

# 5268798_v1

14