CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
EASTWIND MARITIME S.A.
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax:  (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
EASTWIND MARITIME S.A.,

                        Plaintiff,

                     v.

TONNEVOLD REEFER 7 KS,
a/ka TONNEVOLD REEFER 2 KS,
a/ka/ TONNEVOLD REEFER 4 KS,
a/k/a O.T. TONNEVOLD AS,
a/k/a TONNEVOLD OT,

                        Defendant.
---------------------------------------------------------------X

                        08  CV  3292 (HB)


## EASTWIND'S MEMORANDUM OF LAW

## IN OPPOSITION TO

## TONNEVOLD'S MOTION FOR COUNTERSECURITY

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ……………………………………………...………......ii

TABLE OF AUTHORITIES ……………………………………….....................iii

PRELIMINARY STATEMENT....…………………….…………………...………………1

THE FACTS…………………………………………………....................................3

LEGAL ARGUMENT………………………………………….....................................4

I.      THERE IS NO BASIS FOR AN ORDER DIRECTING
THE PLAINTIFF EASTWIND TO POST COUNTERSECURITY……..4

        A)    COUNTERSECURITY IS ONLY WARRANTED WHEN A
DEFENDANT ASSERTS A COUNTERCLAIM ARISING
FROM THE SAME TRANSACTION OR OCCURRENCE
THAT IS THE SUBJECT OF THE ORIGINAL ACTION…………………….4

        B)    IN THE CASE AT HAND, THE COUNTERCLAIM IS BASED
ON A COMPLETELY DIFFERENT CONTRACT THAN THE
CONTRACT ALLEGEDLY BREACHED IN THE COMPLAINT
AND IT IS BASED ON COMPLETELY DIFFERENT CIRCUMSTANCES…...7

        C)    THE DIFFERENCES IN THE UNDERLYING CONTRACTS ARE
AMPLIFIED BY REASON OF THE FACT THAT THE TWO
DIFFERENT CONTRACTS HAVE TWO COMPLETELY DIFFERENT
ARBITRATION CLAUSES……………………………………………...10

        D)    IN THE CASE AT HAND, PRINCIPAL'S ALLEGED ALTER EGO IS
NOT A PARTY TO THE CASE………………………………………..11

        E)    IN THE CASE AT HAND, THE ALLEGED ALTER EGO, ECO
SHIPPING LTD. HAS NOT BEEN SERVED AND IS NOT BEFORE
THIS COURT…………………………………………………………14

II.     UNDER NO CIRCUMSTANCES SHOULD THE PLAINTIFF
EASTWIND BE REQUIRED TO PROVIDE COUNTERSECURITY
FOR MORE THAN IT HAS ATTACHED……………………………...15

CONCLUSION ……………………….........................................................16

## TABLE OF AUTHORITIES

**PAGE**

**CASES**

Adams v. Jacobs,
    950 F.2d 89 (2d. Cir. 1991)……………………………………..……..5, 10

Afram Lines International, Inc. v. The M/V CAPETAN YIANNIS,
    905 F.2d 347 (11th Cir. 1990)……………………………………….....15

Amerada Hess Corp. v. S.S. ATHENA,
    1984 A.M.C. 130 (D. Md. Apr. 21, 1983)……………………………......5, 6

Boland Marine & Manufacturing Company v. M/V BRIGHT FIELD,
    1999 U.S. Dist. LEXIS 3847 (E.D. La. Mar. 25, 1999)…………………………15

Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A.,
    2007 U.S. Dist. LEXIS 18827 (S.D.N.Y. Feb. 26, 2007)…………………………15

Dolco Investments, Ltd. v. Moonriver Development, Ltd.,
    486 F. Supp. 2d 261 (S.D.N.Y. 2007)……………………………………….…13

Federman v Empire Fire & Marine Ins. Co.,
    597 F2d 798 (2d. Cir. 1979)…………………………………………….....7, 10

Finecom Shipping Ltd. v. Multi Trade Enterprises AG,
    2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005)………………………..…15

Front Carriers Ltd. v. Transfield ER Cape Ltd.,
    2007 U.S. Dist. LEXIS 85177 (S.D.N.Y. Nov. 19, 2007)…………………………15

Incas & Monterey Printing & Packaging, Ltd. v. M/V SANG JIN,
    747 F.2d 958, 964-65 (5th Cir. 1984)
    *cert. denied sub nom.* Van Weelde Bros. Shipping, Ltd. v. I.N.C.A.S.,
    471 U.S. 1117, 105 S. Ct. 2361, 86 L. Ed. 2d 261 (1985)…………………….…..4, 5

Moore v. New York Cotton Exchange,
    270 U.S. 593, 46 S. Ct. 367, 70 L. Ed. 750 (1926)…………………………………5

Result Shipping Co., Ltd, v. Ferruzzi Trading USA, Inc.,
    56 F. 3rd 394 (2nd Cir. 1995)…………………………………………………...15

Sea-Terminals, Inc. v. Independent Container Lines, Ltd.,
    1990 U.S. Dist. LEXIS 11561 (S.D.N.Y. Sept. 4, 1990)…………………………....5

SPL Shipping Ltd. v. Gujarat Cheminex Ltd.,
    2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. Mar. 15, 2007)…………………….…...12

Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte. Ltd.,
    2008 U.S. Dist. LEXIS 1728 (S.D.N.Y. Jan. 4, 2008)...............................…...15

Ullises Shipping Corp. v. FAL Shipping Co.,
    415 F. Supp. 2d 318 (S.D.N.Y. 2006)
    *overruled by Aqua Stoli as stated in*
    Tide Line, Inc. v. Eastrade Commodities, Inc.,
    2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006)............................12

Voyager Shipholding Corp. v. Hanjin Shipping Co.,
    539 F. Supp. 2d 688, 2008 U.S. Dist. LEXIS 11045 (S.D.N.Y. 2008)...........4, 5

Wajilam Exps. (Singapore) Pte, Ltd. v. ATL Shipping Ltd.,
    475 F. Supp. 2d 275, 2006 U.S. Dist. LEXIS 77033 (S.D.N.Y. 2006).............13


**STATUTES and RULES**

*Fed. R. Civ. P.* 13.......................................................................…...….....4, 5

*Fed. R. Civ. P.* 13(a)(1)..............................................................…..…........…...13

*Fed. R. Civ. P.* 13(a)(1)(A).......................................................…...….......4, 6, 9, 13

*Fed. R. Civ. P.* 13(a)(1)(B).......................................................................…...…...13

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims,
Rule B...............................................................................................................2, 14

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims,
Rule E.................................................................................................................2, 4

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims,
Rule E(7)......................................................................................5, 6, 10, 11, 14, 15

*Fed. R. Civ. P.*, Supplemental Rules for Admiralty or Maritime Claims,
Rule E(7)(a)..................................................................................................1, 2, 4


**OTHER AUTHORITIES**

James W.N. Moore, MOORE'S FEDERAL PRACTICE, E-738....….........................15

### PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of the plaintiff Eastwind Maritime S.A. (hereinafter "Eastwind") in opposition to the motion of Defendants Tonnevold Reefer 7 KS, Tonnevold Reefer 4 KS, and O.T. Tonnevold AS (hereinafter collectively referred to as "Tonnevold") for counter-security pursuant to Fed. R. Civ. P. Supplemental Rule E (7)(a), in the amount of $836,601.22.

Eastwind opposes the motion for countersecurity on the principal ground that Tonnevold's application for countersecurity fails to meet the threshold requirement for an order directing countersecurity. The Supplemental Rules for Admiralty and Maritime Claims, Rule E (7)(a) in particular, require countersecurity to be given when a defendant, such as Tonnevold, asserts a counterclaim that arises from the same transaction or occurrence that is the subject of the original action. In the case at hand, the Defendant Tonnevold does not assert a counterclaim arising from the same transaction or occurrence that is the subject of the original action and, therefore, its application for countersecurity must be denied.

The Plaintiff Eastwind's original action asserts a claim for breach of a charter party contract dated July 19, 2007 for the shipment of cocoa. In contrast, the Defendant's counterclaim asserts claims arising from the shipment of redfish pursuant to a completely separate contract and a completely different voyage that was undertaken between August 7, 2006 and September 18, 2006. Indeed, the Defendant's counterclaim is already the subject of an ongoing arbitration proceeding here in New York that does not even involve the Plaintiff Eastwind. Simply put, Defendant Tonnevold's assertion that its counterclaim

against Plaintiff Eastwind arises from the same "underlying dispute" is nothing more than a frivolous abuse of Rule E (7)(a).

While the differences in the disputes will be clarified herein, it is important to note at the outset that the contract upon which Tonnevold's counterclaim is based was not with Plaintiff Eastwind, but was instead a contract with nonparty ECo Shipping Ltd. Defendant Tonnevold tries to overcome this obvious deficiency by alleging that Plaintiff Eastwind and nonparty ECo Shipping Ltd. are alter egos. However, this claim, weak as it is, is entirely belied by the fact that Defendant Tonnevold is already currently engaged in an arbitration proceeding against nonparty ECo Shipping Ltd. in New York with respect to the shipment of redfish and the Plaintiff Eastwind is not a party to that proceeding.

Under these circumstances, it is self evident that defendant Tonnevold is unable to satisfy the minimal requirements for countersecurity. Put another way, defendant Tonnevold tortuously invokes the provisions of Rule E to accomplish what it could not otherwise accomplish under Rule B of the Supplemental Rules of the Federal Rules of Civil Procedure, namely to obtain security for its claim against nonparty ECo Shipping Ltd., which is already the subject of an arbitration proceeding. This cannot be permitted under the circumstances of this case.

In the alternative, but only if this Court could somehow determine that Tonnevold has asserted a proper counterclaim within the scope of Rule E, the demand for countersecurity is excessive and the Defendant Tonnevold should be limited to the amount of security that Tonnevold has posted to secure Eastwind's claim in the original action. The general rule is that a plaintiff, such as Eastwind, should only be required to provide countersecurity in the same amount that it has succeeded in attaching.

Tonnevold's motion for countersecurity does not present any persuasive reason to justify a departure from the general rule.

## THE FACTS

The facts pertaining to the Plaintiff Eastwind's Opposition to Defendant Tonnevold's Motion for Countersecurity are more fully set forth in the accompanying Attorney's Affidavit of Owen F. Duffy, dated May 28, 2008 and the Declaration of John G. Poles of Poles, Tublin, Stratakis, Gonzales & Weichert, LLP, counsel for nonparty ECo Shipping Shipping Ltd., in arbitration with Defendant Tonnevold in New York, dated May 28, 2008. Rather than restate the facts fully herein, this Memorandum of Law will make reference to, and will discuss as appropriate, the facts set forth the accompanying Attorney's Affidavit. Citation to the Attorney's Affidavit will refer to "Duffy Affidavit at ¶ _," and citation to the Poles Declaration will refer to "Poles Declaration at ¶ _ or as Exhibit 6 to Duffy Affidavit."

**LEGAL ARGUMENT**

**POINT I**

**THERE IS NO BASIS FOR AN ORDER DIRECTING
THE PLAINTIFF EASTWIND TO POST COUNTERSECURITY**

A)    COUNTERSECURITY IS ONLY WARRANTED WHEN A DEFENDANT
ASSERTS A COUNTERCLAIM ARISING FROM THE SAME TRANSACTION
OR OCCURRENCE THAT IS THE SUBJECT OF THE ORIGINAL ACTION

An application for countersecurity is governed by The Supplemental Rules for

Admiralty or Maritime Claims and, in particular, Rule E of The Supplemental Rules. The

Rule states in relevant part:

> When a person who has given security for damages in the original action
> asserts *a counterclaim that arises from the transaction or occurrence
> that is the subject of the original action*, a plaintiff for whose benefit the
> security has been given must give security for damages demanded in the
> counterclaim unless the court, for cause shown, directs otherwise.

The Supplemental Rules for Admiralty and Maritime Claims, Rule E (7)(a) (emphasis
added).

The language of Rule E is identical to the definition of mandatory counterclaims

in Federal Rule of Civil Procedure 13(a)(1)(A).  As such, when determining whether a

Rule E(7)(a) counterclaim arises from the same "transaction or occurrence" as the

original claims, the district courts apply the same test for compulsory counterclaims

which have been developed under Fed. R. Civ. P. 13 and its predecessors.  Voyager

Shipholding Corp. v. Hanjin Shipping Co., 539 F. Supp. 2d 688, 2008 U.S. Dist. LEXIS

11045, *4 - *5 (S.D.N.Y. 2008) *citing* Incas & Monterey Printing & Packaging, Ltd. v.

M/V SANG JIN, 747 F.2d 958, 964-65 (5th Cir. 1984) *cert. denied sub nom.* Van Weelde

4

Bros. Shipping, Ltd. v. I.N.C.A.S., 471 U.S. 1117, 105 S. Ct. 2361, 86 L. Ed. 2d 261 (1985); *and see*, Sea-Terminals, Inc. v. Independent Container Lines, Ltd., 1990 U.S. Dist. LEXIS 11561 (S.D.N.Y. Sept. 4, 1990). In the Second Circuit, the test for determining whether a counterclaim is compulsory is whether the essential facts of the claims are so logically connected that judicial economy and fairness dictate that all issues be resolved in one lawsuit. *See*, Adams v. Jacobs, 950 F.2d 89, 92 (2d. Cir. 1991).

The word "transaction" has been construed to have a "flexible meaning" that may include a series of transactions depending not so much on immediateness as upon the logical relationship. *See*, Voyager Shipholding, *citing* Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S. Ct. 367, 70 L. Ed. 750 (1926). At the same time, however, the liberal construction of Fed. R. Civ. P. 13 has its bounds and, in fact, the courts have limited the type of transactions that impose a countersecurity requirement in the context of Rule E(7). *See*, Incas & Monterey, *supra*, 747 F.2d at 965 (denying defendants motion for countersecurity for a claim of wrongful seizure because the counterclaim did not arise out of the same transaction or occurrence as the original claim) *citing* Solomon v. Bruchhausen, 305 F.2d 941 (2d Cir. 1962), *cert. denied sub nom* Isbrandtsen v. Maximo, 371 U.S. 951, 83 S. Ct. 506, 9 L. Ed. 2d 499 (1963) (reaching a similar conclusion under former Admiralty Rule 50). Most importantly, at least one court has denied a request for countersecurity under Rule E(7) under circumstances that were very similar to those now presented to this court. *See*, Amerada Hess Corp. v. S.S. ATHENA, 1984 A.M.C. 130 (D. Md. Apr. 21, 1983).

In Amerada Hess the Court denied a defendant's request for countersecurity where the original claim asserted a cause of action for the wrongful taking of the

5

plaintiff's goods and the counterclaims asserted causes of action for abuse of process and like claims. 1984 A.M.C. 130. Additionally, the defendant in <u>Amerada Hess</u> asserted other counterclaims against the plaintiff for maritime claims such as dead freight, freight and demurrage & detention. *Id.* However, and just like the situation at hand, these claims were based on an agreement with Amerada Hess Shipping Corporation, which, according to the plaintiff, was a separate and distinct entity from the plaintiff, Amerada Hess Corporation. *Id.* As such, the Court denied the motion for counter-security, stating:

> Where a defendant asserts a counterclaim against an entity which is not the plaintiff, Rule E(7) cannot be used as a basis for seeking the posting of counter security, for Rule E(7), by its language, provides security to the defendant only for those claims which are asserted against the plaintiff by the defendant. Consequently, the claim for counter security as to Counts I, II & III must also be denied for those claims are against Amerada Hess Shipping Corporation, an entity which is not a party to this suit.

*Id.*

Consistent with the holding in <u>Amerada Hess</u>, the counterclaims asserted by Defendants Tonnevold fail to meet the minimum requirements of Rule E (7) and they cannot be a basis for this Court to require the Plaintiff to post countersecurity. In particular, the Defendant Tonnevold should not be permitted to make loose allegations of alter-ego to obtain countersecurity from the Plaintiff in circumstances where the Plaintiff was not a party to the earlier and distinct contract from which the counterclaim arises.

Additionally, the case law construing Fed. R. Civ. P. 13(a)(1)(A) demonstrates that the counterclaims made in this matter are not sufficient because they are not the type of counterclaims that would be compulsory under the Federal Rules. The factors most generally considered as indicators of compulsory nature of counterclaim are: (1) identity of facts between original claim and counterclaim; (2) mutuality of proof; (3) logical relationship between original claim and counterclaim and although these factors may be

indicative in one sense or another of compulsory character of counterclaim, no one factor is conclusive. Federman v Empire Fire & Marine Ins. Co., 597 F2d 798 (2d. Cir. 1979). Because none of these factors is present in the case at hand, defendant's motion for countersecurity must be denied.

      B)    IN THE CASE AT HAND, THE COUNTERCLAIM IS BASED ON A COMPLETELY DIFFERENT CONTRACT THAN THE CONTRACT ALLEGEDLY BREACHED IN THE COMPLAINT AND IT IS BASED ON COMPLETELY DIFFERENT CIRCUMSTANCES

The Verified Complaint in this action is based on the Third Addendum between Plaintiff Eastwind and Defendant Tonnevold to the Charter Party dated December 6, 2006 between non-party ECo and Defendant Tonnevold. See, Duffy Affidavit at Exhibit 1, Verified Complaint at ¶'s 7 – 9. While the Third Addendum is labeled an "addendum", it is, in fact, legally a new contract. This is so because it was not written at the same time as the Charter Party of December 6, 2006, but was instead signed by Plaintiff Eastwind and Defendant Tonnevold on or about July 19, 2007. See, Duffy Affidavit at Exhibit 7, the three addenda to the Charter Party of December 6, 2006, Addendum No. 3 being the charter party that is the basis of the case at hand.

More to the point, the contract that was agreed to on or about July 19, 2007 was made in respect of a specific shipment of cocoa that was carried from Panjang, Malaysia to Buenaventura, Columbia,. See, Duffy Affidavit at Exhibit 1, Verified Complaint at ¶ 9. The Plaintiff's original claim in this action is based on the fact that the M/V THORGULL was off-hire during periods of the voyage and, also, the M/V THORGULL consumed fuel in excess of what had been agreed for the vessel to perform the specific voyage from

Malaysia to Columbia. *See*, Duffy Affidavit at Exhibit 1, Verified Complaint at ¶s 12 to 13.

No matter how well-pled the counterclaim is, the unavoidable fact is that the counterclaim asserted by the Defendant Tonnevold has absolutely nothing to do with the carriage of the cargo of cocoa or any voyage from Malaysia to Columbia in 2007. On the contrary, the Defendant Tonnevold's pleadings make it abundantly clear that Tonnevold's "counter-claim" arises from a shipment of redfish, *see*, Duffy Affidavit at Ex. 4, Tonnevold's Answer and Counter-Claim at ¶s 40 & 41, and Ex. 6, Poles Declaration at ¶ 22, which occurred in August of 2006. *See id.* Furthermore, the shipment of redfish was governed by a completely different charter party agreement and, also, a pooling agreement that was entered into between Tonnevold Reefer 7 KS and non-party, ECo back in December of 2005. *See*, Duffy Affidavit at Exhibit 4, Answer and Counterclaim at ¶s 37, 38 & 39, and Ex. 6, Poles Declaration at ¶ 5.

However viewed, the Third Addendum to the Charter Party of December 6, 2006 is most certainly a different contract from the contracts of September 29, 2000 (the Pool Agreement) and December 20, 2005 (the Tonnevold/ECo charter) upon which the Defendant Tonnevold's counterclaims are based.  For example, the counterclaim specifically refers to an alleged breach of "Charter clause 15", which in turn refers to "lawful trades", in the charter party dated December 20, 2005.  *See*, Duffy Affidavit at Exhibit 4, Verified Answer and Counter-claim at ¶ 38. This clause is not in any of the documents submitted by Defendant Tonnevold, but it is attached as Exhibit A to the Declaration of John G. Poles, counsel for non-party ECo. *See*, Duffy Affidavit at Exhibit 6, Poles Declaration. This document makes clear that clause 15, the clause which ECo

allegedly breached, was a clause in a Charter Party between non-party ECo and Tonnevold Reefer 4 KS dated September 29, 2000 that related to the employment of the vessel by non-party Eco in "lawful trades", but it was not included in the charter party dated December 20, 2005. At any rate, the Charter Party dated December 20, 2005 was based on the ECo 2002 Pool Agreement, which is attached to the charter of December 20, 2005 in Mr. Walle's Declaration. *See*, Duffy Affidavit at Exhibit 7, Declaration of Walle at Exhibit 1.

What is clear is that the Charter Party dated December 6, 2006, and its addenda, was not based on a pooling agreement[1]. Instead it was a stand-alone charter party originally between non-party ECo and Defendant Tonnevold, but later between Plaintiff Eastwind and Defendant Tonnevold. Plaintiff Eastwind alleges in its Verified Complaint that Defendant Tonnevold breached the Third Addendum of the Charter Party of December 6, 2006 because of overpayments and overconsumption by the vessel. *See*, Duffy Affidavit at Exhibit 1, Verified Complaint at ¶s 12 to 13. These claims, asserted by Eastwind, have absolutely nothing to do with the transaction or occurrence involving the shipment of redfish on or about August 7, 2006, which was before the separate and distinct charter party dated December 6, 2006 and the three addendums to that charter party.

With due regard for the separate and distinct nature of the claim set forth in the Complaint and the counterclaim alleged by Defendant Tonnevold, none of the relevant factors indicate a compulsory counterclaim under Fed. R. Civ. P. 13(a)(1)(A), and, for the same reason, there is no counterclaim that qualifies as a basis for counter-security under

---

[1] In point of fact, the "Pool" was not even operational in December of 2006. *See*, Duffy Affidavit at Exhibit 7, Declaration of Walle at ¶s 15 & 16.

Rule E(7). Indeed, there is (1) <u>no</u> identity of facts between original claim (off hire and overconsumption of fuel) and the counterclaim (improper shipment of redfish); (2) <u>no</u> mutuality of proof; and, most certainly, (3) <u>no</u> logical relationship between original claim and counterclaim. <u>Federman v Empire Fire & Marine Ins. Co.</u>, 597 F2d 798 (2d. Cir. 1979). Because none of these factors are present in the case at hand, the counterclaims of Defendant Tonnevold do not qualify for counter-security and this Court may not grant Defendant Tonnevold countersecurity in this matter.

C)   THE DIFFERENCES IN THE UNDERLYING CONTRACTS ARE AMPLIFIED BY REASON OF THE FACT THAT THE TWO DIFFERENT CONTRACTS HAVE TWO COMPLETELY DIFFERENT ARBITRATION CLAUSES

In addition to the two very different contracts which form the basis of the two very different claims in this matter, and as stated above, in the Second Circuit, the test for determining whether a counterclaim is compulsory is whether essential facts of the claims are so logically connected that judicial economy and fairness dictate that all issues be resolved in one lawsuit. *See*, <u>Adams v. Jacobs</u>, 950 F.2d 89, 92 (2d. Cir. 1991).

Defendant Tonnevold's counterclaim does not implicate any concerns of judicial economy or fairness. Not only do Eastwind's claim and Tonnevold's counterclaim involve a very different subject matter, *i.e.* shipment of an improper cargo versus overpayment of hire and overconsumption of fuel, and not only do they involve two different contracts between differing parties, *i.e.* ECo and Eastwind, the two underlying contracts contain two different arbitration clauses which mandate that the claims be prosecuted in different forums.

The original claims made by the Plaintiff Eastwind in its Verified Complaint require, pursuant to Clause 22 of the charter party, that any disputes arising out of that

contract shall be governed by English law and shall be referred to arbitration in London. *See*, Duffy Affidavit at Exhibit 1, Verified Complaint at ¶ 15. This point is readily conceded by the Defendant Tonnevold. *See*, Duffy Affidavit at Exhibit 4, Answer and Counterclaim at ¶ 15. By contrast, the counterclaim asserted by Defendant Tonnevold is based on the charter party between non-party ECo and defendant Tonnevold that was dated December 20, 2005 which provides, at Clause 17, for arbitration in New York under New York law. *See*, Duffy Affidavit at Ex. 7, Walle Declaration at Ex. 1, page 13, clause 17, *and see*, Duffy Affidavit at Ex. 6, clause 61 of Exhibit A to the Poles Declaration. Furthermore, the arbitration between Tonnevold and ECo to resolve Tonnevold's claims arising from the carriage of redfish has already commenced with arbitrators having been appointed and a hearing date set for June 11, 2008, while the arbitration in London has not commenced and no arbitrators have been appointed. *See*, Duffy Affidavit at Exhibit 6, Poles Declaration at ¶ 8 re hearing date and appointment of arbitrators in the New York arbitration.

Therefore, with due regard for the fact that the original claim and counterclaim are subject to different law and will proceed in different forums, there are no concerns of judicial economy or fairness that would compel the Court to consider that the original claim and counterclaim involve the same transaction or occurrence, which is the predicate for invoking Rule E (7).

D)   DEFENDANT TONNEVOLD'S RESORT TO ALTER EGO ALLEGATIONS
      IN AN ATTEMPT TO SUPPORT ITS CLAIM FOR COUNTERSECURITY FAILS

All of the alter ego cases citied by Defendant Tonnevold in its Memorandum of Law, involved situations where both the alleged principal and its alleged alter ego were

11

named as co-defendants and thereby each was made a party to the case. *See generally*, Tonneovld's Memorandum of Law in Support, pages 11 – 12. The facts of those cases are in stark contrast to the facts of the case at hand where Tonnevold alleges, as a counterclaim, a claim against another party and seeks to have the plaintiff post countersecurity for that counterclaim with allegations that Plaintiff Eastwind is the alleged alter ego of ECo Shipping Ltd., against whom Tonnevold is asserting a claim for breach of charter. ECo is already arbitrating the disputes alleged by Tonnevold as counterclaims, Eastwind is not a party to that arbitration and, therefore, the claims of alter ego as a basis for requiring the posting of countersecurity fall flat.

Additionally, each of the alter ego case cited by Defendant Tonnevold in its Memorandum of Law involved an entity paying the debts of its alleged alter egos and, therefore, the court was presented with a factual basis from which to presume an alter ego relationship. *See*, Tonneovld's Memorandum of Law in Support, pages 11 – 12. For one example, in SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562 (S.D.N.Y. Mar. 15, 2007), the alleged alter ego of defendant Nirma Ltd. was the lead defendant Gujarat Cheminex Ltd. and the plaintiff alleged that Nirma Ltd. had on several occasions made payments on behalf of Gujarat Cheminex Ltd. For another example, in Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318, 325-26 (S.D.N.Y. 2006) *overruled by Aqua Stoli as stated in* Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006), the Court, after dismissing the allegations of alter ego against defendant FAL Energy Co. Ltd., allowed the other alter ego allegation of co-defendants FAL Oil Co. Ltd. and FAL Shipping Co. Ltd. to stand after specifically stating that the plaintiff had presented enough evidence to satisfy its

burden with respect to FAL Oil Co. Ltd., FAL Oil Co. Ltd. having paid FAL Shipping Co. Ltd.'s debts.

None of the considerations for the above cases is present here. Most certainly, the Defendant Tonnevold makes no allegation that that Eastwind had ever made payments on behalf of ECo and there are no other factual allegations that would support the inference that Eastwind dominated ECo to such an extent that Eastwind should be held liable for the debts of ECo. *See*, Duffy Affidavit at Ex. 4, Answer and Counterclaim at ¶s 49 to 61. Instead, all that Defendant Tonnevold is able to show is that there was a relationship between ECo and Eastwind, but that is insufficient to creat an inference of alter ego liability because Tonnevold fails to make any *factual* allegations that would tend to support the inference that Eastwind exercised complete domination over ECo such that, when Eastwind seeks security from Tonnevold, Tonnevold would be entitled to have counter security from Eastwind to secure claims Tonnevold has against ECo. Other than the loose conclusory allegation of domination, the Answer and Counterclaim t does not even allege that Eastwind ever paid ECo.'s debts, and much more than that is required. *Cf.*, Wajilam, 2006 U.S. Dist. LEXIS 77033, at *21 (denying motion to dismiss when complaint alleged a regular practice of diverting and commingling funds, supported by an affidavit alleging that funds were *always* diverted to the dominant company); *but see*, Dolco Investments, Ltd. v. Moonriver Development, Ltd., 486 F. Supp. 2d 261, 270 (S.D.N.Y. 2007)(Judge Sweet granted a motion to vacate an attachment against an alter ego defendant, GML, where the plaintiff was only able to point to instances where the alter ego defendant had made payments on behalf of the putative defendant, but could not make any allegation for an intermingling of funds or other alter ego factors.).

13

E)    IN THE CASE AT HAND, THE ALLEGED ALTER EGO,
ECO SHIPPING LTD., HAS NOT BEEN SERVED WITH
ANY LEGAL PROCESS AND IT IS NOT BEFORE THIS COURT

The connection between Supplemental Rule E(7) and *Fed. R. Civ. P.* 13(a)(1)(A) has been made clear in the cases interpreting the two provisions.  Less clear, however, is the effect of *Fed. R. Civ. P.* 13(a)(1)(B) which states that a counterclaim is only compulsory if the claim "does not require adding another party over whom the court cannot acquire jurisdiction."  Because Defendant Tonnevold's counterclaim obviously requires adding nonparty ECo Shipping Ltd. as another party to this action, it is clearly not a compulsory counterclaim under *Fed. R. Civ. P.* 13(a)(1).  As such, Tonnevold's counterclaim does not qualify for counter-security under Supplemental Rule E(7). Defendant Tonnevold is simply transparently attempting to accomplish what it could not accomplish otherwise, obtaining security for the ongoing arbitration in New York between it and nonparty ECo Shipping Ltd.  Defendant Tonnevold is simply attempting to effect an end-run around the prohibition of Supplemental Rule B from requiring a party to post security when it is present in the district in which the case is being heard. As nonparty ECo Shipping Ltd. is present in Southern District of New York, Defendant Tonnevold has been unable to obtain prejudgment security for the arbitration between it and nonparty ECo Shipping Ltd. that is ongoing in New York.  Defendant Tonnevold is therefore now attempting to either obtain security from the separate but related, Eastwind, or, in the alternative, avoid having to post security in its dispute with Plaintiff Eastwind. Neither of these purposes should persuade this Court to award Defendant Tonnevold with counter-security in the case at hand.

## POINT II

**UNDER NO CIRCUMSTANCES SHOULD THE PLAINTIFF EASTWIND BE
REQUIRED TO PROVIDE COUNTERSECURITY FOR MORE THAN IT HAS ATTACHED.**

The purpose of Rule E(7) is to equalize, where not otherwise inequitable, the

positions of the plaintiff and defendant with regards to security. Result Shipping Co., Ltd.

v. Ferruzzi Trading USA, Inc., 56 F. 3rd 394, 400 (2nd Cir. 1995). The Fifth Circuit has

echoed the sentiment, stating that "there seems little justification for ever requiring a

larger bond on the counterclaim than is required in the original action." Boland Marine &

Manufacturing Company v. M/V BRIGHT FIELD, 1999 U.S. Dist. LEXIS 3847 (E.D.

La. March 25, 1999) citing Moore's Federal Practice at E-738. *See also*, Afram Lines

International, Inc. v. The M/V CAPETAN YIANNIS, 905 F.2d 347 (11th Cir. 1990)

(remanding award of $4,000,000 countersecurity when original claim for only $440,000).

The district courts of this circuit have consistently limited orders for

countersecurity on a dollar-for-dollar basis. *See* Finecom Shipping Ltd. v. Multi Trade

Enterprises AG, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. October 25, 2005) (ordering

countersecurity up to the amount already attached by the plaintiff, but providing for

additional security for any additional funds attached); *see also*, Clipper Shipping Lines

Ltd. v. Global Transporte Oceanico S.A., 2007 U.S. Dist. LEXIS 18827 (S.D.N.Y. Feb.

26, 2007); and, Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte. Ltd., 2008 U.S.

Dist. LEXIS 1728 * 10 (S.D.N.Y. Jan. 4, 2008)(The court stated: "it is a well-settled

principal that where a court finds counter-security to be appropriate, it should be limited

to the amount that claimant has attached."); and *cf.*, Front Carriers Ltd. v. Transfield ER

Cape Ltd., 2007 U.S. Dist. LEXIS 85177 * 13 (S.D.N.Y. Nov. 19, 2007)(granting full

countersecurity, but only because the plaintiff had already attached property in an amount far exceeding the defendant's counter claim).

The Defendant Tonnevold's argument for full security, in the amount of $836,601.22, is completely against the weight of authority on this issue. Indeed, in its application for full security, the Defendant Tonnevold has failed to even mention the above cited case law that is completely contrary to its position. Apart from that, the Defendant Tonnevold has presented no argument to justify a departure from the well-settled principal that, where a court finds counter-security to be appropriate, it should be limited to the amount that claimant has attached. As such, any order requiring the Plaintiff Eastwind to post countersecurity should be limited as requiring the sum of $187,634.08 as opposed to the $836,601.22 improvidently sought by Defendant Tonnevold.

## CONCLUSION

For all of the reasons stated above, individually and collectively, the Defendant Tonneovld's Motion for Counter-Security must be denied by this Court. In the alternative, any counter-security granted by this Court should be limited to the amount of security that the Defendant Tonnevold has had attached in this action.

Dated: Port Washington, New York
         May 28, 2008

                                      CHALOS, O'CONNOR & DUFFY, LLP
                                      Attorneys for Plaintiff,
                                      EASTWIND MARITIME S.A.

                        By:    _____
                                      Owen F. Duffy (OD-3144)

16

George E. Murray (GM-4172)
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax: (516) 767-3605