William J. Honan
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY  10007-3189
(212) 513-3200

ATTORNEYS FOR DEFENDANTS
TØNNEVOLD REEFER 7 KS,
TØNNEVOLD REEFER 4 KS, AND
O.T TØNNEVOLD AS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EASTWIND MARITIME, S.A.,

                  Plaintiff,

    -against-

TØNNEVOLD REEFER 7 KS,
a/k/a TØNNEVOLD REEFER 2 KS,
a/k/a TØNNEVOLD REEFER 4 KS,
a/k/a O.T. TØNNEVOLD AS,
a/k/a TØNNEVOLD OT,

                  Defendants.

08 Civ. 3292 (HB)

**TØNNEVOLD  REPLY MEMORANDUM OF LAW IN**
**<u>FURTHER SUPPORT OF MOTION FOR COUNTERSECURITY</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1
ARGUMENT .........................................................................................................................2
    I.    TØNNEVOLD'S WELL-PLED COUNTER-CLAIM SUPPORTS ITS
         COUNTERSECURITY APPLICATION ...............................................................2
        A.    Tønnevold's Counter-Claims Arise Out of the Same Transaction and
             Occurrence as Eastwind's Claims. ..........................................................................2
        B.    Tønnevold's Alter-Ego Allegations Support its Counter-claims Against
             Eastwind. ................................................................................................................4
             1. Tønnevold has pled, and now offers proof of, financial interrelatedness between
             ECo and Eastwind. ................................................................................................ 4

             2. Eastwind not being party to the New York arbitration and ECo not being party to
             this action is legally irrelevant. ............................................................................. 6

    II.    FULL COUNTER-SECURITY IS APPROPRIATE ............................................9
CONCLUSION .....................................................................................................................10

i

## TABLE OF AUTHORITIES

## CASES

*Amerada Hess v. S.S. Athena,*
    1984 A.M.C. 130 (D.Md. Apr. 21, 1983) ................................................................................7

*Banco Nacional de Cuba v. First National City Bank of New York,*
    478 F.2d 191 (2d Cir. 1973)....................................................................................................8

*Dolco Inv. Ltd. v. Moonriver Dev't, Ltd.,*
    486 F.Supp.2d 261 (S.D.N.Y. 2007) .......................................................................................5

*Dudley v. Smith,*
    504 F.2d 979 (5th Cir. 1974) ...................................................................................................9

*E.J. Korvette Co. v. Parker Pen Company,*
    17 F.R.D. 267 (S.D.N.Y. 1995) ..............................................................................................3

*In re Holborn Oil Trading Ltd.,*
    774 F.Supp. 840 (S.D.N.Y. 1991) ..........................................................................................5

*Moore v. New York Cotton Exchange,*
    270 U.S. 593 (1926)................................................................................................................3

*Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.,*
    312 F.2d 299 (2d Cir. 1963)....................................................................................................6

*Pancoast Trading S.A. v. Eurograni S.R.L,*
    No. 07 Civ. 8581, 2008 WL 190376 (S.D.N.Y. Jan. 22, 2008).............................................9

*Sea Eagle Maritime, Ltd. v. Hanan International, Inc.,*
    No. 84 Civ. 3210, 1985 WL 3828 (S.D.N.Y. Nov. 14, 1985) ...............................................7

*SPL Shipping Ltd. v. Gujarat Cheminex Ltd.,*
    No. 06 Civ. 15375, 2007 WL 831810 (S.D.N.Y. Mar. 15, 2007) .........................................5

*Titan Nav., Inc. v. Timsco, Inc.,*
    652 F.Supp. 76 (S.D.Tex. 1986), *aff'd* 808 F.2d 400 (5th Cir. 1987)..............................3

*Voyager Shipholding Corp. v. Hanjin Shipping Co., Ltd.,*
    539 F.Supp.2d 688 (S.D.N.Y. 2008).................................................................................4, 9

*United States v. Aquavella,*
    615 F.2d 12 (2d Cir. 1980).......................................................................................................3

## **STATUTES**

Rule E(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ....................................................................................................*1, 2, 3, 4, 9*

Federal Rules of Civil Procedure 13(a) ..................................................................................6

Defendants, Tønnevold Reefer 7 KS, Tønnevold Reefer 4 KS, and O.T. Tønnevold AS ("Tønnevold"), respectfully submit this Reply Memorandum of Law in further support of their motion requesting an Order, pursuant to Rule E(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule"), directing that Plaintiff Eastwind Maritime A.S. ("Eastwind"), the alter-ego of non-party ECo Shipping Ltd. ("ECo"), provide counter-security on Tønnevold's counter-claims.

## PRELIMINARY STATEMENT

Eastwind's opposition to Tønnevold's motion focuses primarily on whether Tønnevold's counter-claim arises out of the same transaction or occurrence as the claims pled by Eastwind in its complaint and whether Tønnevold properly pled that ECo Shipping Ltd. is Eastwind's alter-ego. Eastwind's argument concerning the first point is based on a simplistic view of the facts which creates an incorrect suggestion that the two charters are independent and unrelated. The facts, however, are complex. They can be summarized, however, as follows:

- The breach of the Time Charter by ECo/Eastwind ("Original Charter") caused the Vessel to be blacklisted by the NEAFC, thereby severely impairing the Owner's ability to trade the Vessel at anywhere near the market price.

- In an attempt to avoid (or minimize) the Owner's damages, ECo/Eastwind agreed to charter the Vessel until the NEAFC removed the Vessel from the blacklist ("Mitigating Charter").

- It was while the Vessel was serving under this Mitigating Charter that ECo/Eastwind alleges claims arose for which it obtained an attachment of Owner's funds.

1

- Notwithstanding the agreement with ECo/Eastwind (leading to the Mitigating Charter), the Owner did suffer damages during the period of the Mitigating Charter. For example, Owner's principal claim is due to ECo's/Eastwind's refusal to honor its commitment to continue the Second Charter until the NEAFC released the Vessel from the blacklist, thereby causing the Vessel to sit unemployed. It is for this claim and others, all of which arose during the period of the Mitigating Charter that the Owner is now seeking counter-security.

As to the alter-ego protestations by Eastwind, Eastwind ignores many of the well-pled alter-ego allegations which show that Eastwind and ECo should be considered one entity for liability purposes under the alter-ego doctrine. Tønnevold also submits with this reply irrefutable proof of Eastwind and ECo's paying agent practices with respect to the Vessel, one of the hallmarks of the alter-ego doctrine.

Finally, Rule E(7) does not limit counter-security to the same amount as that attached by the plaintiff. Such a limitation here would ignore the reality that Tønnevold's damages are significantly higher than Eastwind's claims because of wrongful acts which led to its Vessel being blacklisted. Under the circumstances, the Court should use its broad discretion to order full counter-security.

## ARGUMENT

### I. TØNNEVOLD'S WELL-PLED COUNTER-CLAIM SUPPORTS ITS COUNTER-SECURITY APPLICATION

#### A. Tønnevold's Counter-Claims Arise Out of the Same Transaction and Occurrence as Eastwind's Claims.

In considering whether a counter-claim arises out of the same transaction as the subject matter of the opposing party's claim, the Second Circuit has stated that, "this Circuit has generally taken a broad view, not requiring an absolute identity of factual backgrounds...but

only a logical relationship between them." *United States v. Aquavella*, 615 F.2d 12, 22 (2d. Cir. 1980) (internal citations omitted). As the Supreme Court has stated, "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *E.J. Korvette Co. v. Parker Pen Company*, 17 F.R.D. 267, 268-69 (S.D.N.Y. 1955) (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926)).

Eastwind argues that the claims are from two different contracts and therefore do not arise out of the same transaction or occurrence. There is no requirement, however, that a counterclaim arise out of the same contract as the opposing party's claims. In *Titan Nav., Inc. v. Timsco, Inc.*, the court granted counter-security under Rule E(7) for claims of fraud, breach of contract and warranty, and an alter-ego claim, arising out of a number of contracts to provide computer hardware and software. 652 F. Supp. 76, 99 (S.D.Tex. 1986), *aff'd* 808 F.2d 400 (5th Cir. 1987). After all, Rule E(7) does not state that the defendant must have a claim that arises out of the same "contract."

The Tønnevold claims, the subject of the counter-security request, and the Eastwind claims, the subject of the attachment, all do arise, however, out of the same transaction. It is clear that the Mitigating Charter would not have been agreed but for the ECo/Eastwind breach of the Original Charter. *See* emails dated Jan. 12, 2007, July 12, 2007, Aug. 31, 2007, and Sept. 3, 2007, attached as Exh. A to Honan Aff. For example, in a July 12, 2007 email, Paul Capkanis of Eastwind states, "we have attempted successfully to employ the vessel [under the Mitigating Charter] until she is free from NEAFC blacklisting." Honan Aff., Exh. A. In a September 3, 2007 email, Toby Moors of Eastwind states that "[w]e are obviously well aware of our agreements [to charter the vessel] otherwise the ship would have been redelivered long ago."

3

Honan Aff., Exh. A. In the July 12, 2007 email, Capkanis admits that the voyage involving the carriage of cocoa (during which ECo's/Eastwind's claims arose) was a direct result of trying to keep the Vessel employed after it was blacklisted. Honan Aff., Exh. A.

All of Tønnevold's claims arise out of the inability or failure of the Mitigating Charter to offset the losses suffered by Tønnevold during the period of the Mitigating Charter. While Tønnevold's cause of action arose during the Original Charter, all of Tønnevold's losses occurred during Mitigating Charter. The two contracts are inextricably linked and should be considered a single transaction for the purpose of satisfying the requirements of Rule E(7).

### B. Tønnevold's Alter-Ego Allegations Support its Counter-claims Against Eastwind.

Eastwind argues that Tønnevold has made no allegations, and submitted no proof of, financial interrelatedness between ECo and Eastwind -- unlike the other alter-ego cases proffered by Tønnevold. In addition, Eastwind notes it is not a party to the New York arbitration between ECo and Tønnevold, where the merits of the counter-claim are being determined. Eastwind Br. at 11-12. Both arguments are without merit as they ignore well-settled Rule E(7) counter-security law and Second Circuit law on arbitrations and determining alter-ego liability.

#### 1. Tønnevold has pled, and now offers proof of, financial interrelatedness between ECo and Eastwind.

Judge Lynch noted in *Voyager Shipholding Corp. v. Hanjin Shipping Co., Ltd.*, 539 F.Supp.2d at 692, that denial of counter-security was improper because the defendant had submitted a "well-pleaded counter-claim." *Id.* To determine what would constitute a "well-pleaded counter-claim" when a defendant is making alter-ego allegations, it is logical to consider what alter-ego allegations are proper in the analogous Rule B context. In its moving papers, Tønnevold discussed multiple alter-ego cases where the allegations set forth met, or were less than, the allegations made by Tønnevold in its counter-claim. *See* moving brief pp. 11-12.

4

Although Eastwind makes the blanket statement that no "factual" allegations were made by Tønnevold as to alter-ego liability, this is belied by the counter-claim wherein Tønnevold makes alter-ego allegations such as: (1) domination and control resulting in the disregarding of corporate form (Counter-claim ¶¶ 49-52, 59-61); (2) arms-length dealing between the entities (same); (3) overlap of officers and employees (*Id.* ¶¶ 53, 56-57); (4) same mailing addresses (*Id.* ¶¶ 54, 58); (5) same types of email addresses (*Id.* ¶ 53); (6) entering into charter agreements and providing notice to both entities(*Id.* ¶ 58); and (7) co-mingling of funds (*Id.* ¶ 59). These allegations all meet the alter-ego factors considered by maritime courts when the alter-ego doctrine is asserted. *See, e.g., In re Holborn Oil Trading Ltd.*, 774 F. Supp. 840, 844 (S.D.N.Y. 1991); *Dolco Inv. Ltd. v. Moonriver Dev't, Ltd.*, 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007). And they certainly meet the standards used by other courts within this District when assessing Rule B prima facie alter-ego allegations as set forth at pages 11-12 of Tønnevold moving brief.

Although well-pled counter-claim allegations are sufficient, Eastwind places particular interest in the lack of financial allegations and proof such as an "entity paying the debts of its alleged alter egos" and that specifically Tønnevold did not allege "Eastwind ever paid ECo's debts" because many of the alter-ego cases relied upon focus on this factor. Eastwind Br. at 12-13. First, alter-ego cases do not turn on the payments of the debt of another. *See, e.g., SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06 Civ. 15375, 2007 WL 831810 (S.D.N.Y. Mar. 15, 2007). In any event, Tønnevold has asserted funds-related alter-ego allegations in its counter-claim. (Counter-claim ¶ 59).

And Tønnevold now submits documentary support showing that Eastwind did in fact pay the debts of ECo going back as far as 2000 when Tønnevold Reefer 4 KS originally entered into a time charter of the Vessel with ECo for a period of about twelve months, which charter was

extended by the agreement of the parties until December 20, 2005. (Counter-claim ¶ 37). Year after year, month after month, in 2000, 2001, 2004, 2005, and 2006, Tønnevold banking records show Vessel payments were made by: "ECo Shipping New York C/O Eastwind Transport Ltd," and "ECo Shipping C/O Eastwind Investments," two of the many Eastwind entities in the Eastwind group. *See* Honan Aff. Exh. B (collecting banking records from 2000-2007).[1] This irrefutable debt payment proof is the *sine qua non* of a veil-piercing analysis. It also supports other alter-ego factors as the same address is listed for both Eastwind and Eco on the banking records. *Id.* In all, Tønnevold alter-ego allegations are valid such that Eastwind should be required to post counter-security.

### 2. Eastwind not being party to the New York arbitration and ECo not being party to this action is legally irrelevant.

Eastwind makes two related arguments concerning Eastwind not being a party to the New York arbitration between ECo and Tønnevold, and ECo not being a party to this action (per Rule 13(a)(1)(B)), and that these facts irrefutably preclude counter-security. Eastwind Br. at 12-14. These arguments ignore the realities of the alter-ego doctrine and the law within this Circuit.

As to Eastwind not being a party to the ECo and Tønnevold arbitration, Tønnevold is entitled to have the blacklisting damages dispute resolved by an arbitration panel and then to subsequently litigate alter-ego liability issues before this Court. In *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 301 (2d Cir. 1963), the Second Circuit vacated the district court's confirmation of an arbitration award with respect to one party because the appellate court concluded that the court below should not have made alter-

---

[1] As alleged in Tønnevold Counter-claim, there are many Eastwind entities part of the "Eastwind Group" which use the 444 Madison Avenue address. (Counter-claim ¶ 54). And in 2007 payments to Tønnevold, the payments only vary such that ECo is replaced by Eastwind at the beginning, with the "C/O" still being "Eastwind Investment." (Honan Aff. Exh. B). This is an example of how ECo and Eastwind plugged in any entity they so chose for payment purposes, when the hire obligations were those of ECo and Eastwind alone.

6

ego determinations during what should have been an expeditious confirmation process. The *Orion Shipping* Court noted, "[i]t would unduly complicate and protract the proceeding were the court to be confronted with a potentially voluminous record setting out details of the corporate relationship between a party bound by an arbitration award and its purported 'alter ego.'" *Id.* The Court further observed that this holding did not preclude the plaintiff "from bringing a separate action against Signal [alleged alter ego] to enforce the award against Eastern Panama, involving an 'alter ego' theory." *Id.*

Here, should Tønnevold prevail in its arbitration against ECo, it will file an action to confirm the arbitration award against ECo and in a separate enforcement action seek to hold Eastwind legally responsible as ECo's alter-ego. Because Eastwind's monies would be held in connection with this proceeding should Tønnevold counter-security request be granted, the enforcement allegations and alter-ego determination would take place in this Court as there would be quasi in rem jurisdiction over Eastwind's monies.[2] *See Sea Eagle Maritime, Ltd. v. Hanan Int'l, Inc.*, No. 84 Civ. 3210, 1985 WL 3828, at **1-2 (S.D.N.Y. Nov. 14, 1985).

As to ECo not being a named party to this action, Tønnevold seeks a counter-security Order against Eastwind. Plaintiffs cite the case of *Amerada Hess v. S.S. Athena*, 1984 A.M.C. 130 (D.Md. Apr. 21, 1983), in support of the argument that Tønnevold should not be permitted to obtain countersecurity from Eastwind because Eastwind was not a party to an earlier contract from which the counterclaim arises. Eastwind Br. at 6. The case of *Amerada Hess*, however, did not involve well-supported alter-ego allegations, as Tønnevold has made here. The Second Circuit has found that a party not named in litigation may still be an opposing party for counterclaim purposes under Rule 13 in certain cases in which the party is functionally identical

---

[2] The Court would likely have personal jurisdiction over Eastwind in an enforcement proceeding. As noted in the 2007 banking records, Eastwind's address is given as 444 Madison Avenue, with Eastwind Investment. (Honan Aff. Exh. B).

to the actual opposing party named in the litigation. In *Banco Nacional de Cuba v. First National City Bank of New York*, 478 F.2d 191 (2d Cir. 1973), the court treated a party not named in the litigation as an opposing party after concluding that the parties were "one and the same for the purposes of th[e] litigation." *Id.* at 193 n.1. The Court held that because the parties "acted as a single entity" and because one was the alter-ego of the other, both were 'opposing parties' within the meaning of Rule 13. The same principle should apply in this matter where Eastwind and ECo are alter-egos and have acted as a single entity.

And from a practical standpoint, the July 12, 2007 email, discussed, *supra*, speaks for itself. Paul Capkanis, on behalf of Eastwind, laid out why the third addendum was being undertaken – as mitigation for blacklisting. Eastwind is a party to this action, has obtained security by attaching Tønnevold's monies, and should be made to post counter-security to place the parties on equal footing. The alter-ego allegations in Tønnevold's complaint show how the officers consider the entities interchangeably for commercial purposes. This should be sufficient to support Tønnevold's counter-security request. And it cannot be forgotten that even counsel for Eastwind had to acknowledge the relatedness of the entities in its Verified Complaint in an attempt to explain that some sort of novation took place at the time of the three addendums (Verified Complaint ¶¶ 7-8).

The shell game between ECo and Eastwind should have repercussions. Officers and employees cannot use both entities interchangeably for payment and obligation purposes and then disavow any knowledge of them for litigation purposes (*See* Duffy Aff. ¶ 17, "[a]fter due investigation" counsel for Eastwind was able to determine who ECo was and what the counter-claim was about). If the alter-ego doctrine applies, the corporate entity that dominates the other are treated as one, "so that any act committed by one is attributed to both, and if either is bound,

by contract, judgment, or otherwise, both are equally bound ...." *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974) (quotation and citation omitted). Counter-security is appropriate from Eastwind for the misdeeds of both ECo and Eastwind.

## II. **FULL COUNTER-SECURITY IS APPROPRIATE**

As Tønnevold noted in its moving papers, Rule E(7) does not limit counter-security to the amount attached by a plaintiff. The Second Circuit has not decided this issue, unlike the Fifth and Eleventh Circuits as noted in Eastwind's moving papers at p. 15. Eastwind is also correct that some judges in this District have decided, in their discretion, to so limit counter-security. Eastwind Br. at 15-16. But Eastwind is not correct when stating Tønnevold has presented no argument in support of non-matching counter-security.

Tønnevold's counter-security application relied heavily on two decisions, *Voyager Shipholding Corp. v. Hanjin Shipping Co., Ltd.*, 539 F.Supp.2d at 692 and *Pancoast Trading S.A. v. Eurograni S.R.L*, No. 07 Civ. 8581, 2008 WL 190376, at *3 (S.D.N.Y. Jan. 22, 2008). In the decisions, Judge Lynch addresses policy reasons for not limiting counter-security as well as the fact that Rule E(7) itself has no such limitation. *See Pancoast*, (noting that with respect to the amount of security, Rule E(7) "does not limit the countersecurity to the amount of the security provided by the defendant to secure the plaintiff's claim." *Id.*).[3] This Court aptly described the reason for such a rule is to prevent a "race to the courthouse" whereby an enterprising plaintiff could stave off a larger affirmative Rule B attachment claim against it by asserting a smaller claim first:

---

[3] In *Voyager*, Judge Lynch made similar findings concerning Supplemental Rule E(7) and summarized the counter-security cases where courts reached different conclusions as to the amount of counter-security to award based on the factual circumstances of each case. 2008 WL 400923, at *4. Ultimately, counter-security was limited to the amount of the defendant's assets attached by the plaintiff because, *inter alia*, the defendant had already obtained "considerable security" in a foreign litigation against the plaintiff. *Id.* Such is not the case here; no security has been obtained by Tønnevold in support of its blacklisting claims anywhere in the world.

The rule seeks to provide security of recovery against the event of a successful claim, as a substitute for the actual seizure of vessels, which otherwise would be the only means to secure an eventual judgment in the far-flung and highly mobile world of maritime commerce. Had [the defendant] filed first, it would surely have been entitled to a Rule B attachment fully securing its claim. A party with a small claim should not be enabled to defeat full security for a counterparty's larger claim simply by winning the race to the courthouse.

*Pancoast*, 2008 WL 190376, at *1.

Here, Tønnevold's damages are substantially higher than Eastwind's because of the substantial damages suffered due to the blacklisting actions committed by ECo and Eastwind. (Counter-Claim ¶ 62). Counter-security is supposed to put parties on equal footing. Limiting counter-security in the amount sought by Eastwind would be inequitable.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in its moving papers, Defendant Tønnevold respectfully requests that this Court grant its motion for counter-security in the amount of $836,601.22 and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 9, 2008

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: *[signature]*

William J. Honan
Christopher R. Nolan
195 Broadway
New York, New York 10007
Telephone: (212) 513-3200
Telefax: (212) 385-9010 fax
E-mail: william.honan@hklaw.com
chris.nolan@hklaw.com